IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| NEIL D. LEWIS,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br>DR. TODD WILCOX,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:11-CV-1125 TS |

This matter is before the Court on Dr. Todd Wilcox's Motion for Summary Judgment. For the reasons discussed below, the Court will grant the Motion.

## I.  FACTUAL BACKGROUND

Plaintiff Neil D. Lewis was incarcerated at the Salt Lake County Jail on November 1, 2009.  Defendant Dr. Wilcox is the medical director of the Salt Lake County Jail System and is one of several physicians who attend to patients at that institution.

On November 14, 2009, Plaintiff was examined by Dr. Zach Williams who determined that the patient had a normal gait pattern, normal mobility, normal reflexes, normal strength, and

a negative test for neurological compression.  Plaintiff was diagnosed with back strain without any neurological involvement and was prescribed pain medication.

On December 2, 2009, Plaintiff was examined by Dr. Scott Woller who determined that Plaintiff had a normal gait, normal reflexes, normal rectal tone on rectal exam, and normal strength.  Dr. Woller changed Plaintiffs medication and further requested that the staff attempt to obtain Plaintiff's outside medical records.

On December 11, 2009, Plaintiff was examined by Dr. Stacy Johnson who determined that the Plaintiff was able to ambulate normally, his mobility was normal, his tendon reflexes were normal, and he was uncooperative with strength testing.  Dr. Johnson diagnosed Plaintiff with non-specific low back pain and changed his pain medication at Plaintiff's request.

On December 28, 2009, Plaintiff was examined by Dr. Robert Pendleton who determined that Plaintiff had a normal gait and normal mobility.  He diagnosed Plaintiff with chronic and poorly specified back pain that was nonmalignant.  At Plaintiff's request, Dr. Pendleton changed Plaintiff's pain medication to Tramadol and recommended behavioral therapy as well as physical therapy techniques.

On January 14, 2010, Plaintiff was examined by Dr. David Liddle who determined that Plaintiff had normal mobility, negative evidence for radiculopathy, normal strength, and normal sensation.  He diagnosed Plaintiff with chronic low back pain and added additional pain medication to his regimen.  Dr. Liddle requested that the staff continue to attempt to obtain Plaintiff's outside medical records.

On January 27, 2010, Plaintiff was again examined by Dr. Stacy Johnson, who determined that Plaintiff had normal strength, normal tendon reflexes, normal sensation, and normal gait.  Dr. Johnson noted that Plaintiff had been working as a trustee in the jail.  Dr. Johnson diagnosed Plaintiff with nonspecific low back pain and altered his pain medication regimen.

The outside medical records that were previously requested were scanned into the electronic medical record system on January 28, 2010.   Those medical records contained clinical evaluations and MRI data that confirmed the low back pain diagnosis.  When the outside medical records arrived at the jail, they were reviewed and found to be consistent with the medical examinations and treatment plans that were already in place for Plaintiff.

On March 7, 2010, Plaintiff was examined by Dr. Peter Yarbrough who determined that Plaintiff had a normal neurological exam with normal reflexes and strength.  He diagnosed Plaintiff with chronic pain and spinal stenosis and changed Plaintiff to a temporary dose of Lortab because of an increase in Plaintiff's pain.  Dr. Yarbrough explained to Plaintiff that the Lortab would not be used chronically while Plaintiff was in custody.

On March 13, 2010, Plaintiff saw Dr. Wilcox to request Lortab.  Dr. Wilcox denied Plaintiff's request.  In the process of discussing Plaintiff's treatment plan, Plaintiff became agitated to the point that an officer had to step in and discontinue the visit.  Dr. Wilcox prescribed pain medication even though the visit had to be terminated early for poor behavior.

On March 14, 2010, Plaintiff sought clearance to be a trustee worker in the jail.  Plaintiff indicated that his back pain was not a problem and that he would like to work.  Dr. Wilcox

3

confronted Plaintiff about the previous day's encounter wherein Plaintiff indicated that his back hurt so much that he could not function.  Dr. Wilcox denied Plaintiff's request for trustee status based on Dr. Wilcox's perception of Plaintiff's risk of injury and his MRI results.  Dr. Wilcox did not change Plaintiff's pain medication regimen.

Dr. Wilcox has stated that, based on Plaintiff's numerous examinations, his clinical presentation did not meet criteria for a new MRI to be performed and review of Plaintiff's previous MRI provided anatomic correlation that was consistent with his exam.  Therefore, there was no clinical reason to obtain an MRI.

## II.  PROCEDURAL HISTORY

Plaintiff brought this action against Dr. Wilcox in December 2011.  An Amended Complaint was filed on May 21, 2012.  Plaintiff alleges that Dr. Wilcox violated the Eighth Amendment by demonstrating deliberate indifference to Plaintiff's serious medical needs. Specifically, Plaintiff alleges that Dr. Wilcox failed to adequately investigate Plaintiff's back problems and failed to provide adequate care.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.[1]  In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury

---

[1]FED. R. CIV. P. 56(a).

could return a verdict for the nonmoving party in the face of all the evidence presented.[2]   The

Court is required to construe all facts and reasonable inferences in the light most favorable to the

nonmoving party.[3]

## IV.  DISCUSSION

Plaintiff brings a claim against Dr. Wilcox under the Eighth Amendment pursuant to 42

U.S.C. § 1983.  In *Estelle v. Gamble*,[4] the Supreme Court held that "deliberate indifference to

serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'

proscribed by the Eighth Amendment."[5]  "Deliberate indifference involves both an objective and

a subjective component."[6]  The objective component is met if the deprivation is "sufficiently

serious."[7]  A medical need is sufficiently serious "if it is one that has been diagnosed by a

physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention."[8]

---

[2]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[4]429 U.S. 97 (1976).

[5]*Id*. at 104 (quoting *Greg v. Georgia*, 428 U.S. 153, 173 (1976)).

[6]*Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

[7]*Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[8]*Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999).

5

The subjective component is met only if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[9] Allegations of mere negligence in diagnosing or treating a medical condition,[10] or "inadvertent failure to provide adequate medical care" are insufficient to state a claim under the Eighth Amendment.[11] "Delay in [providing] medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."[12] The Tenth Circuit has held that the "substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain."[13]

Considering the evidence in this case, the Court finds that Plaintiff cannot meet either the objective or subjective component. Under the objective component, Plaintiff must demonstrate that the alleged deprivation was sufficiently serious. The record shows that Plaintiff repeatedly sought medical care for lower back pain. The record also shows that Plaintiff was examined when he sought care and was prescribed various treatments, including pain medication.

Plaintiff argues that Defendant did not retrieve Plaintiff's outside medical records quickly enough and should have done more to treat him, such as performing an MRI. However, the

---

[9]*Farmer*, 511 U.S. at 837.

[10]*Estelle*, 429 U.S. at 105.

[11]*Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir. 1996).

[12]*Sealock*, 218 F.3d at 1210.

[13]*Garrett v. Stratman*, 254 F.3d 949, 950 (10th Cir. 2001).

evidence shows that jail staff did request the outside medical records in a timely fashion and reviewed those records when they arrived.  Those records were in accordance with the examinations conducted by the doctors at the jail and were consistent with the treatment Plaintiff was receiving.  Plaintiff points to nothing suggesting that receiving the outside medical records earlier would have altered his treatment or improved his condition.  Further, Dr. Wilcox has provided a statement that, based on Plaintiff's numerous examinations, Plaintiff did not meet the criteria for a new MRI to be performed.  There is nothing in the record to the contrary.

Moreover, the record suggests that Plaintiff's back pain may not have been sufficiently serious.  The interactions that Plaintiff had with Dr. Wilcox on March 13 and 14, 2010, demonstrate this point.  On March 13, 2010, Plaintiff met with Dr. Wilcox to request Lortab, which he had previously been prescribed and had used for pain management while not in custody.  Dr. Wilcox refused and Plaintiff became agitated, so agitated that the examination had to be discontinued.  On March 14, 2010, Plaintiff sought permission from Dr. Wilcox to work as a trustee at the jail and stated that his back pain was not a problem.

Based on these interactions, as well as the other evidence, it appears that Plaintiff's back problems may not have been as serious as his desire to obtain narcotic medication.  Indeed, many of the visits Plaintiff had with the doctors at the jail involved Plaintiff requesting narcotic medication that he had been prescribed prior to his incarceration.

As for the subjective component, Plaintiff must show that Dr. Wilcox knew of and disregarded an excessive risk to Plaintiff's health or safety.  The Tenth Circuit has noted that "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state

a constitutional violation."[14]  Further, "the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment.  Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing."[15]  The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation."[16]  "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met."[17]

In this case, Plaintiff complains that Dr. Wilcox "failed to investigate enough to make an informed medical judgment concerning the Plaintiff's lower back problems."[18]  Plaintiff specifically points to the length of time it took the jail to obtain his outside medical records and the fact that Dr. Wilcox did not order an MRI.  This does not meet the subjective standard.

As stated, whether to undertake additional medical testing, such as requesting an MRI, is something that falls within the scope of a doctor's medical judgment and does not satisfy the objective component.  Further, while it did take time to obtain the medical records, Dr. Wilcox has stated that the records were consistent with the examinations received at the jail and the

---

[14]*Oxendine v. Kaplan*, 241 F.3d 1272, 1277 n.7 (10th Cir. 2001).

[15]*Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).

[16]*Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999).

[17]*Self*, 439 F.3d at 1233.

[18]Docket No. 11, at 2.

treatment Plaintiff received.  There is no evidence to suggest that Defendant deliberately delayed obtaining the medical records.  Rather, the medical records were requested and, once received, were reviewed by the jail medical personnel.  All of the evidence shows that Plaintiff was evaluated when he sought medical attention and that he was prescribed treatment in accordance with the evaluations.  Therefore, the Court finds that the subjective component has not been met.

### V.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 32) is GRANTED.  The remaining Motions (Docket Nos. 36 and 38) are DENIED AS MOOT.

The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff, and close this case forthwith.

DATED   September 5, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge

9